LORINDA H. CHAPLIN, LUCIA ANN CHAPLIN, AND LOUISA
MARIA CHAPLIN *v.* EZEKIEL SAWYER, *Administrator of the
Estate of* MATTHEW CHAPLIN, DECEASED, AND JAMES
BUCHANAN, W. G. BUCHANAN, AND H. F. SLACK, *creditors
of said Estate.*

[IN CHANCERY.]

*Homestead.    Chancery.    Dower.*

The act of 1857 (Acts of 1857, No. 28, p. 39) providing for relief in certain
cases where the homestead can not be' conveniently set out in severalty,
applies as well to the homestead left by deceased persons, as to that of per-
sons in life.

It is not requisite to the jurisdiction of the court of chancery under the act
of 1857, relating to the homestead, to grant relief to the owners of a home-
stead left by a deceased person, that the probate court should first adjudge
that there is a homestead in such deceased person's estate.

Under the act of 1856 (Acts of 1856, No. 23, p. 24) providing that there should
be no homestead right in the estate of a deceased person, the assets of
which, over and above all debts due, and charges of administration, shall
exceed $500, the personal property assigned by the probate court to the
widow, and the widow's dower, are not to be reckoned among the assets.

Under the laws of this state, relating to the homestead, in force in 1858, both
homestead and dower may be set out in the same estate, but the dower is to
be reduced by the amount of the widow's interest in the homestead.

PETITION by the widow and minor children of Matthew Chap-
lin, deceased, for relief, in respect to their homestead interest in
certain real estate; in accordance with the provisions of the act
of 1857, entitled "an act relating to the homestead," (Acts of
1857, No. 28, p. 39.)

The facts of the case sufficiently appear from the opinion of
the court.

*A. Underwood,* for the orators.

*Leslie & Rogers,* for the defendant creditors.

ALDIS, J.    This is a proceeding under the act of 1857, relat-
ing to the homestead. The widow and heirs of Matthew

Chaplin et al. *v.* Sawyer, Adm'r, et als.

Chaplin presented their petition to the court of chancery, stating that they had a homestead interest in a tavern stand, and about twenty acres of land, and the buildings thereon, in Wells River village, of the value of $2,000 ; that the homestead could not be set out in severalty without great inconvenience to the parties interested, and praying for relief under the statute. The administrator of the estate was made a defendant. None of the creditors of Matthew Chaplin's estate were joined as defendants ; and it does not appear that there were any mortgagees, levying creditors, or other incumbrancers specifically interested in the property, to be joined. The administrator appeared, admitted the facts stated in the petition, and advised a sale of the whole property. The chancellor ordered a sale of the whole, and that the homestead interest in the avails, (being $500,) be deposited in bank, subject to the order of the court. The estate was sold, the $500 placed in bank, and the remainder was left in the hands of the administrator. The widow and heirs then prayed the court that the $500 be paid to them, or invested for their benefit ; the administrator assented, and the court ordered the sum to be put into the hands of Judge Underwood, to be lent by him upon good security, upon interest, payable annually, for their benefit, and he to hold the security, subject to the order of the court. The money was loaned by Judge Underwood, according to the order of the court, and it is not claimed but that the security is ample and the loan safe.

About a year after all this had been done, J. & W. G. Buchanan, and others, creditors of the estate of Matthew Chaplin, who appear here as defendants, applied to the probate court for an order that the moneys derived from the sale of the estate, and in the hands of the administrator, be distributed among the creditors. The petition to the probate court did not specifically pray that this sum claimed as homestead should be distributed, but it is admitted that such was the object of the application. Thereupon the widow and heirs applied, by petition, to the chancellor, for an injunction to restrain the creditors from any further proceeding in the probate court, in regard to the homestead. The injunction was granted. The defendant creditors so enjoined filed an answer upon oath to the petition, setting

forth their grievances, and prayed the chancellor that they might be heard in the premises. The petition of the widow and heirs was entered at the January Term, 1860, and the answer drawn and sworn to at the January Term, 1861, but not filed till recently. No petition has been filed by the creditors for leave to appear and contest the right to the fund. Chancery having jurisdiction of the matter, the injunction might well stand without re-opening and deciding anew the question whether the petitioners were entitled to the fund.

I. The first question raised in the case is upon the motion to dismiss the appeal of the creditors to this court, upon the ground that they have not properly appeared, or been allowed by the chancellor to appear, as parties to the original petition, and as claimants of the fund. The administrator by his counsel denies having taken any appeal.

It was unquestionably within the discretion of the chancellor, and upon a proper case shown it would have been his duty, to allow the creditors, upon petition and notice to the adverse party, to appear and contest the claims made by the widow and heirs in the original petition. Thus, if there was ground to suspect collusion between the petitioners and the administrator, or if in fact no homestead right existed, or the estate was of less value than $2,000, or other good defence existed, and the administrator refused or neglected to make such defence, the creditors interested might apply to the chancellor and get leave to appear and defend. They did not apply or appear in this case till the injunction issued against them. Then they appeared upon the motion for the injunction, and stated, by way of answer to the motion, the grounds upon which they contested the claim of the widow and heirs to the fund. Upon this no hearing appears to have been had—no order directly made by the chancellor. From the time the creditors appear in the case, their proceedings seem to have been in disregard of all proper practice in chancery, and as this is the first case which has come before us under this statute, we feel it to be our duty to so declare, lest this loose practice might be deemed a precedent for proceedings in some future case. As the chancellor seems to have treated the creditors as being in court to be heard in regard to

the disposition of the fund, and has ordered the fund to be divided between the widow and heirs, we have concluded to revise the proceedings, as well upon the original petition as upon the matter of the injunction.

I. The first question which the creditors raise is, that the act applies only to the homesteads of persons in life, and that the chancellor has no jurisdiction of cases where the existence and disposition of the homestead of a deceased person are to be acted upon ; and that the probate court alone has jurisdiction in such cases.

1. There is nothing in the language of the act to indicate that the homestead of deceased persons were intended to be excepted. The statute by its terms applies to all homesteads.

2. The intent of the act, and the evil to be remedied, require that it should be extended to homesteads belonging to the estates of deceased, as well as living persons.

Where "the dwelling house, buildings and lands appurtenant," which constitute the homestead, are of considerable value, the severance of the homestead, to be occupied by one family, while the rest of the house and land is occupied by another, becomes a matter of much difficulty, and is generally attended with inconvenience to all parties. It is difficult to set out a part of an expensive, or even of a moderately expensive house, so that a five hundred dollar interest in it shall secure to the poor family the comforts which the homestead is intended to provide. To the owner of the rest of the house and lands the homestead becomes a great inconvenience. This evil, which was at once felt when creditors levying executions, or mortgagees entering under foreclosures, sought to take possession, was what the statute sought to remedy. It is obvious that this evil may as well exist, and should as much be remedied, in the case of homesteads accruing in the estates of deceased persons as in others. The course of proceeding in chancery is well adapted to the division, or sale of such estates, and to the distribution, investment, or control of the fund. Hence the statute.

II. The creditors also object that there was no homestead, to be sold or divided, because the assets of the estate exceeded

$500 after paying all debts and the charges of administration. Acts of 1856, p. 24.

Upon. the evidence, however, we think the assets did not exceed $500. Taking out the assignment to the widow and the dower (which are not subject to debts) and which we think should be deducted from the assets, the remainder, after paying debts, does not exceed $500.

It is claimed that both dower and homestead were not intended to co-exist in the same estate. But it is to be observed, 1st, that the statutes giving homestead nowhere express or imply that dower shall be cut off; 2nd, dower goes to the widow— homestead is for the widow *and heirs;* 3rd, the act of 1855, p. 17, provides for setting out dower and homestead, and for deducting the widow's share in the homestead from her dower, thus expressly recognizing both dower and homestead in the same estate.

It is also claimed that the probate court should adjudge that there was a homestead, before the court of chancery can take cognizance of it, either to sell, or assign under the act.

It would be singular if the legislature had made the jurisdiction of chancery, in the matter, to depend on the decision of the probate court. There is nothing in the words of the act to show such an intent. Such a construction would require us to imply such a power and jurisdiction for the probate court against the express grant of the power to the court of chancery. It would require the probate court to act in matters in no ways connected with the estate of deceased persons, and to decide as to the existence of a homestead among persons, all of whom were alive, and where neither they nor their estates could be brought within the jurisdiction of that court. The position can not be sustained.

We find no error in the decree of the chancellor, and it is affirmed, with costs against the creditors, who have appeared and appealed, viz.: James Buchanan, W. G. Buchanan, and H. F. Slack, in this court, and in the court of chancery, from January Term, 1861, and a mandate will be directed to the court of chancery accordingly.